IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRENDA M. SLATE,** *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | )   **CIVIL ACTION 06-0149-WS-M** |
| | ) |
| **SHELL OIL COMPANY,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

    This matter is before the Court on plaintiffs' Motion to Remand (doc. 4) this action to the Circuit Court of Mobile County, Alabama, as well as the parties' complementary Motions for Leave to Take Limited Discovery (docs. 6, 9). These motions are ripe to be taken under submission at this time.

**I.    Background.**

    On May 23, 2004, Ronald Hansford Slate, Anthony Slate, and Joseph Saylor were working on a platform rig in Alabama state waters in connection with their duties as employees of nonparty Grand Isle Shipyard, Inc., when a tragic accident occurred. (Complaint, ¶ 1.) In particular, a section of metal grating/flooring allegedly became detached and fell to the area in which those three individuals were working. (*Id.*, ¶ 2.) According to the Complaint, the falling grate caused injuries to all three men, including fatal injuries to Ronald Hansford Slate. (*Id.*) It is alleged that the platform rig was owned, operated, leased and/or otherwise controlled by Shell Oil Company and Shell Yellowhammer Plant, and that the Slates and Saylor were working at the direction of the Shell entities, with equipment and materials provided by the Shell entities, at the time of the accident. (*Id.*, ¶¶ 3-4.)

    On February 1, 2006, plaintiffs Brenda M. Slate, as personal representative of the estate of Ronald Hansford Slate, deceased; Anthony D. Slate; Sandra J. Slate; Joseph Saylor and Leah Venessa Saylor (collectively, "plaintiffs") filed suit in the Circuit Court of Mobile County, Alabama, against defendants Shell Oil Company, Shell Yellowhammer Plant, James R. Blanton,

and Daniel Echols (collectively, "defendants"), as well as certain fictitious defendants, seeking relief for injuries and other damages arising from the May 23, 2004 accident. Specifically, Brenda Slate brought causes of action for wrongful death (on both negligence and wantonness theories), Anthony Slate and Joseph Saylor advanced substantially similar claims for negligence and wantonness, and Sandra Slate and Leah Saylor presented claims for loss of consortium. The Mobile County proceedings were styled *Brenda M. Slate*, *et al. v. Shell Oil Company, et al.*, Civil Action No. CV-2006-0406.

Although it does not appear that proof of service is included in the state court file, defendants allege that they were served with process by certified mail on various dates between February 10, 2006 and February 24, 2006. Defendants filed a Joint Notice of Removal (doc. 1) on March 10, 2006, removing this action to this District Court. As grounds for removal, defendants maintained that there was complete diversity of citizenship and that the amount in controversy exceeded $75,000, such that removal was proper pursuant to 28 U.S.C. § 1332. To show diversity, defendants maintained that all of them were of diverse citizenship to plaintiffs except for defendant Daniel Echols, who shares Alabama citizenship with plaintiffs. (*See* Joint Notice of Removal, at ¶¶ 6, 10.) In an Affidavit accompanying the removal petition, Echols averred that he had no supervisory or operational responsibilities in connection with Shell's Yellowhammer Plant or Fairway Field as of May 2004 because he was assigned to a Shell facility in McAllen, Texas at the time in question. (Echols Aff., ¶¶ 3-4.) According to Echols' Affidavit, he was not assigned to the Yellowhammer Plant or Fairway Field until November 2004, some six months after the accident. (*Id.*, ¶ 5.) In light of this evidence, defendants argue that there is no possibility that plaintiffs could establish claims against Echols in state court, and that his non-diverse citizenship is therefore irrelevant for diversity purposes.

On April 6, 2006, plaintiffs filed a Motion to Remand (doc. 4). In so doing, plaintiffs conceded that they "will most likely be unable to recover from" Echols, given the content of his Affidavit. (Plaintiffs' Brief (doc. 5), at 12 n.4.)[1] Nonetheless, plaintiffs insist that diversity

---

[1] To be clear, plaintiffs do not ask this Court to find that Echols' Alabama citizenship must be considered for purposes of federal jurisdiction, and do not seek remand on that basis. In light of plaintiffs' concessions on this point, the Court will not *sua sponte* explore the strength of defendants' fraudulent joinder argument as to Echols. Instead, the Court will

jurisdiction is lacking, shifting the focus from Echols to defendant James R. Blanton.  Plaintiffs' position is that Blanton is properly classified as a citizen of Alabama for diversity purposes, and is therefore not diverse from the plaintiffs.  Defendants counter that Blanton is a Louisiana citizen for diversity purposes, and that even if he were not, his citizenship is immaterial because plaintiffs have fraudulently joined him.  Plaintiffs dispute both Blanton's citizenship and defendants' fraudulent joinder objection.  As such, the issues joined in the Motion to Remand may be succinctly expressed as follows: (1) Was Blanton fraudulently joined in this lawsuit? and (2) If not, is he properly considered to be a citizen of Louisiana or Alabama for § 1332 purposes?  Those two questions guide the Court's inquiry at this time.[2]

## II.    Governing Legal Standard.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction.  *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of

---

exclude Echols' citizenship from the diversity calculus because the uncontradicted evidence is that he had no connection to Shell's Yellowhammer Plant until six months after the events at issue here, and plaintiffs have shown no reasonable likelihood that an Alabama state court might find Echols liable.  *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (facts on fraudulent joinder issue cannot be resolved in plaintiff's favor if plaintiff neither disputes defendant's version of the facts nor offers evidence of contradictory facts).

[2]     In an unusual twist, both plaintiffs and defendants suggest that limited discovery is warranted to answer one question or the other.  In particular, in the event that the Court is unpersuaded by their evidence and argument on the fraudulent joinder issue, defendants request leave to take limited discovery "regarding plaintiffs' allegations against Blanton in order to determine whether plaintiffs can state a legally sufficient claim against him." (Defendants' Motion for Leave to Take Limited Discovery, at 2.)  By contrast, in the event that the Court is not convinced by their evidence and argument on the issue of Blanton's domicile, plaintiffs "move for leave to take limited discovery as to the citizenship of James R. Blanton." (Plaintiffs' Motion for Leave to Take Limited Discovery, at 2.)  These ancillary motions will be addressed in the course of discussing the two principal questions.

remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

There being no federal question presented in the Complaint, defendants based removal on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.*; *see Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Section 1332 contemplates and demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002); *Triggs*, 154 F.3d at 1287. That said, however, "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. A non-diverse defendant who is fraudulently joined does not defeat diversity because his citizenship is excluded from the diversity calculus. The doctrine is triggered when: (i) "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (ii) "there is outright fraud in the plaintiff's pleading of jurisdictional facts"; or (iii) a diverse defendant is joined with a nondiverse defendant as to whom there is no joint liability and the claims against the two defendants have no real connection to each other. *Id.* The remand issue concerning Blanton implicates only the first of these applications.

Where fraudulent joinder is alleged, the defendant bears the burden of proof on that issue. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("where there have been allegations of fraudulent joinder, it is clear that the burden is upon the removing party to prove the alleged fraud"). This burden is heavy. *See Crowe*, 113 F.3d at 1538; *B., Inc.*, 663 F.2d at 549 ("The burden of persuasion placed upon

those who cry 'fraudulent joinder' is indeed a heavy one."). In assessing a fraudulent joinder objection, the Court must view the factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about applicable law in the plaintiff's favor. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998); *Poole v. American Int'l Group, Inc.*, 414 F. Supp.2d 1111, 1116 (M.D. Ala. 2006); *Jones v. Honeywell Int'l, Inc.*, 385 F. Supp.2d 1268, 1271 (M.D. Fla. 2005).

For purposes of fraudulent joinder, the Court is mindful that "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287; *see also GMFS, L.L.C. v. Bounds*, 275 F. Supp.2d 1350, 1353-54 (S.D. Ala. 2003) ("A defendant (typically a resident of the forum) is fraudulently joined if there is no possibility that the plaintiff can prove a cause of action against him."); *Raye v. Employer's Ins. of Wausau,* 345 F. Supp.2d 1313, 1317 (S.D. Ala. 2004) (similar). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287; *see also Pacheco de Perez*, 139 F.3d at 1380 (noting that a "colorable claim" is all that's required to negate fraudulent joinder argument). Nonetheless, it bears emphasizing that "[t]he potential for legal liability must be reasonable, not merely theoretical," in order to foil a fraudulent joinder objection. *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (observing that possibility of liability is assessed by reason and common sense, and that more is required than such a possibility that a designated residence might be struck by a meteor on a given evening) (citations omitted).[3]

---

[3] In weighing the parties' respective arguments, the Court examines "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (citation omitted). In that respect, the procedural mechanism for resolving a fraudulent joinder objection is akin to that utilized on summary judgment. *See id.* In this case, both sides have supplemented the record with material outside the pleadings in support of their respective positions. All such submissions will be considered, just as they would be if this were a Rule 56 proceeding.

**III.      Analysis.**

     *A.       Fraudulent Joinder Issue.*

In their Joint Notice of Removal, defendants invoke fraudulent joinder doctrine by suggesting that plaintiffs could not establish a viable cause of action against Blanton in state court because the Complaint offers only general and conclusory allegations that fail to delineate any act on his part that might give rise to liability. (Doc. 1, ¶ 17 n.5.) The characterization of the Complaint as bereft of allegations of acts or omissions specifically and individually tied to Blanton is accurate. Indeed, the Complaint does not discuss his alleged wrongdoing in specific terms. Rather, plaintiffs lump Blanton in with the other defendants, outlining the factual predicate against those defendants collectively instead of singling out any particular defendant's wrongful acts. For example, the First Cause of Action charges defendants collectively with negligently failing to provide Ronald Hansford Slate with a safe place to work, negligently failing to provide safe and proper equipment and materials, negligently failing to establish safe work practices, negligently failing to install and secure the metal grating in a responsible and safe manner, negligently failing to provide adequate supervision for the work being performed, negligently failing to design a suitable plan for the work being performed, negligently failing to provide adequate warnings to the decedent and others on the platform rig, negligently failing to discover and eliminate hazardous conditions that defendants knew or reasonably should have known existed, and the like. (Complaint, at 3-4.) The initial pleading does not "unpack" those allegations by ascribing specific acts or omissions to specific defendants.

In their Motion to Remand, plaintiffs assert that defendants cannot meet their heavy burden of establishing fraudulent joinder. Plaintiffs rely on Blanton's acknowledgment that at the time of the May 2004 accident, he "served as Operations Superintendent for Shell's Yellowhammer Plant and Fairway Field in Mobile, Alabama." (Blanton Decl., ¶ 3.) As Operations Superintendent, plaintiffs assert, Blanton's duties and responsibilities necessarily would have included items (*e.g.*, responsibility for providing workers with a safe place to work, for providing workers with safe and proper equipment and materials, for establishing safe work practices, for adequately supervising work performed on the platform rig, for eliminating known hazardous conditions on the site, and the like) that form the basis of plaintiffs' negligence and wantonness theories of liability. (Plaintiffs' Brief (doc. 5), at 12.)

Defendants respond by decrying plaintiffs' failure to identify specific allegations against Blanton and their approach of "theorizing" that his duties included those at the core of their negligence and wantonness claims. (Defendants' Opposition (doc. 10), at 13-14.)[4] Defendants appear to be arguing that Blanton is fraudulently joined because plaintiffs have not proven that his Operations Superintendent duties encompassed the supervisory, safety, and other responsibilities that form the cornerstone of plaintiffs' negligence and wantonness theories. But this argument turns the applicable burden of proof on its head. As discussed *supra*, the law of this Circuit leaves no doubt that (a) the removing defendant has the burden of proving that there is no possibility that a cause of action can be established against the resident defendant, (b) this burden is heavy, and (c) the district court is charged with "drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff." *Crowe*, 113 F.3d at 1538, 1541-42. For fraudulent joinder purposes, plaintiffs do not have to prove the alleged nexus between Blanton's Operations Superintendent job duties and the safety/supervisory duties at the heart of the negligence and wantonness claims. Rather, defendants have the burden of showing that no such nexus exists. This they have not done. Defendants proffer no evidence that those safety and supervisory roles were beyond Blanton's purview as Operations Superintendent of that facility. Viewed in the light most favorable to plaintiffs, then, the record shows that the claims against Blanton rest on alleged breach of duties to perform certain safety and supervisory functions at the platform rig where the accident occurred, and that Blanton was Operations Superintendent at the rig at the time of the accident.[5]

---

[4] Defendants assert that plaintiffs' filings "fail[] to articulate in any manner the responsibilities and specific duties purportedly breached by Blanton." (Opposition Brief, at 14.) This statement is incorrect. The Complaint enumerates a laundry list of responsibilities and duties purportedly breached by defendants as a group, and plaintiffs' briefs assert that Blanton's Operations Superintendent job vested those responsibilities and specific duties in him. Therefore, the Court cannot agree with defendants' characterization that the allegations against Blanton are devoid of content.

[5] Under Alabama law, an employee may be held personally liable for the corporation's negligent acts only if he has breached a duty that "contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." *Crigler v. Salac*, 438 So.2d 1375, 1380 (Ala. 1983); *see also Turner v. Hayes*, 719 So.2d 1184, 1188 (Ala.Civ.App. 1997) ("[C]orporate employees are liable personally for the wrongful action of the

In the absence of any proof from defendants that Blanton's Operations Superintendent job did not include those functions, plaintiffs need make no further showing to withstand a fraudulent joinder challenge.[6]

Nor is defendants' invocation of Rule 8 availing for purposes of their fraudulent joinder argument.  A recurring theme in defendants' filings is that pleading rules in the Federal Rules of Civil Procedure forbid plaintiffs from naming an individual defendant in a complaint without identifying specific facts reciting his alleged acts and omissions.  (Notice of Removal, at 6 n.5; Opposition Brief, at 14.)  This argument does not bolster defendants' fraudulent joinder claims.  To be sure, the Complaint could have more expansively delineated the factual basis of the liability that plaintiffs ascribe to Blanton.  However, the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2).  Applying this standard, the Eleventh Circuit has made clear that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).  The rules do not oblige a plaintiff to plead its claims with as much specificity as it can.  *See In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("For better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").  Under the law of this circuit, "[a] complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on

---

company ... only if they personally participate in the tort.").  Such personal participation has been adequately alleged here.

[6] The Court is sensitive to the *Legg* court's admonition that factual questions can be resolved in a plaintiff's favor on fraudulent joinder analysis only where factual questions actually exist.  *See Legg*, 428 F.3d at 1323.  In that regard, defendants' fraudulent joinder argument might rest on a different footing had they presented undisputed evidence that, as Operations Superintendent of the Yellowhammer Plant, Blanton had no responsibility in May 2004 for supervising the work on the platform rig, for establishing or implementing safety procedures, for furnishing workers on-site with appropriate equipment and materials, and for remediating known hazardous conditions.  But defendants have never even suggested that those responsibilities fell outside the scope of Blanton's job duties.  Instead, defendants attempt to shift the burden to plaintiffs to prove that such duties did fall within Blanton's job description.  This maneuver is foreclosed by *Legg*, *Crowe* and a host of other binding authorities.

notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Commercial Workers Int'l Union, AFL-CIO, CLC*, 866 F.2d 1380, 1384 (11th Cir. 1989). The Complaint was undeniably sufficient to place Blanton on notice of these matters; therefore, it passes muster under the pleading requirements of the Federal Rules of Civil Procedure.[7]

The bottom line in any fraudulent joinder analysis is that the district court's role is "limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542. After careful review of the materials presented by the parties, the Court finds that defendants have not satisfied their burden of establishing that plaintiffs' claims against Blanton are obviously fraudulent or frivolous; therefore, the fraudulent joinder objection to the Motion to Remand is **overruled**.

Before leaving the fraudulent joinder issue, the Court notes that defendants have requested permission "to take limited discovery regarding plaintiffs' allegations against Blanton in order to determine whether plaintiffs can state a legally sufficient claim against him." (Defendants' Motion for Leave to Take Limited Discovery, at 2.) No authority is presented for this novel request, nor have defendants outlined any legal, equitable or practical reason that might warrant the granting of such an unusual remedy. Paragraphs 7, 9, 11 and 14 of the Complaint plainly delineate the duties that defendants (including Blanton) are alleged to have breached with respect to plaintiffs' negligence and wantonness theories. Given that plaintiffs' allegations against Blanton are clearly expressed in the Complaint and plaintiffs' accompanying

---

[7] In arguing to the contrary, defendants argue that plaintiffs "merely list a number of Shell employees that they think are Alabama citizens and aver that they must have done something wrong" and that they "simply go down the chain of command theoretically suing individuals solely for the purpose of destroying diversity jurisdiction." (Opposition Brief, at 14.) Such rhetoric is misplaced here. Far from randomly suing Shell employees willy-nilly in hopes that they might be Alabama citizens who defeat diversity jurisdiction, plaintiffs have named as a defendant the person who was Operations Superintendent at the facility when the accident occurred. If, as it appears, the Operations Superintendent is a ranking manager vested with wide-ranging responsibilities for operation of the facility, then plaintiffs' decision to name Blanton as a defendant was neither inappropriate nor forum-shopping gamesmanship. There are undoubtedly cases where plaintiffs strategically sue superfluous individual defendants for diversity reasons when the real defendant is the corporate employer of such individuals; however, nothing before the Court suggests that this is such a case.

filings, the Court perceives no useful benefit to the litigants, the Court, or the interests of justice to be gained by authorizing defendants to take unspecified discovery "regarding plaintiffs' allegations against Blanton" at the outset of these proceedings. Given the undersigned's implicit finding, *supra*, that the Complaint adequately states claims against Blanton, no useful purpose could be served by taking the extraordinary and logically stilted step of authorizing preliminary discovery as to the legal sufficiency of the Complaint. Defendants' Motion for Leave to Take Limited Discovery (doc. 9) is **denied**.[8]

### B. Domicile Issue.

In removing this action from state court, defendants represented that Blanton is a citizen and resident of Louisiana, and that he is therefore of diverse citizenship from plaintiffs, all of whom are Alabama citizens. (Joint Notice of Removal, ¶¶ 6, 9.) Plaintiffs contest this characterization of Blanton's citizenship, arguing that he is in fact an Alabama citizen. This dispute is not simply academic. If Blanton is properly deemed a Louisiana citizen, then his presence does not destroy federal subject-matter jurisdiction over this action. If, however, Blanton is an Alabama citizen, then he is non-diverse from plaintiffs (who are undisputedly also Alabama citizens) and defendants cannot rely on the diversity provisions of 28 U.S.C. § 1332 as a basis for removal jurisdiction.

### 1. Legal Standard for Assessing Citizenship.

For diversity purposes, a person is a citizen of the state in which he is domiciled. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001) (same). "Domicile," in turn, is properly defined as "the place of his true,

---

[8] The Federal Rules of Civil Procedure do not make allowance for the type of exploratory discovery requested by defendants. If a complaint is too vague, too ambiguous or too incomprehensible to enable a defendant to ascertain whether it states a cognizable claim, then the defendant's recourse is to file a motion for more definite statement under Rule 12(e), Fed.R.Civ.P. In the absence of a Rule 12(e) motion (which has not been and could not reasonably be filed here, given the adequacy of the allegations against Blanton under a Rule 8(a) analysis), the legal sufficiency of a complaint for Rule 12(b) purposes is determined based on the as-is status of the complaint, so the notion of taking preliminary discovery of plaintiffs "in order to determine whether plaintiffs can state a legally sufficient claim" that might survive Rule 12(b) scrutiny is a concept that is utterly foreign to the applicable procedural framework.

fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005) (citations omitted); *Valentin*, 254 F.3d at 366; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."); *Broadwater v. Heidtman Steel Products, Inc.*, 300 F. Supp.2d 671, 672 (S.D. Ill. 2003) ("An individual defendant is a citizen of the state where he is domiciled, which is the place one intends to remain.") (citations omitted).[9]

Determination of a party's domicile requires a "totality of the circumstances" approach weighing a constellation of objective facts, no single one of which is entitled to controlling weight. *See Macone v. Nelson*, 274 F. Supp.2d 136, 139 (D.P.R. 2003); *Greenblatt v. Gluck*, 265 F. Supp.2d 346, 351 (S.D.N.Y. 2003); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp.2d 1220, 1227 (M.D. Ala. 2003).[10] Among the numerous indicia considered are the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional,

---

[9] In this regard, a critical distinction emerges between residence and domicile. As a matter of law, a person residing in a particular state is not necessarily domiciled there, and therefore is not necessarily a citizen of that state. *See, e.g., Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (observing that "one can reside in one place but be domiciled in another"); *Chico v. Puerto Rico Elec. Power Authority*, 312 F. Supp.2d 153, 157 (D.P.R. 2004) ("Mere residence is insufficient to determine a party's jurisdictional status."). That said, while the two concepts are analytically distinct, a party's place of residence is *prima facie* evidence of his domicile. *See Chaara v. Intel Corp.*, 410 F. Supp.2d 1080, 1091 (D.N.M. 2005) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile.") (citations omitted); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp.2d 1220, 1226 (M.D. Ala. 2003) (recognizing presumption that state of residence equates to domicile).

[10] One appellate court has explained in colorful fashion that "in this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking. Domicile is not a thing, like a rabbit or a carrot, but a legal conclusion ...." *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991).

civil, religious or social organizations are established. *See Macone*, 274 F. Supp.2d at 139; *Greenblatt*, 265 F. Supp.2d at 351; *Audi*, 273 F. Supp.2d at 1226.[11] In addition to these objective criteria, the domicile inquiry also considers a party's subjective statements of intent, although such representations are not dispositive. *See Audi*, 273 F. Supp.2d at 1227 (statements of intent are also considered in determining domicile, but may be negated by other declarations or inconsistent acts).

A party can have only one domicile at any given moment. *See Valentin*, 254 F.3d at 367. When one's domicile is established, it can change only upon a concurrent showing of both (1) physical presence at the new location, and (2) intent to remain there indefinitely. *See McCormick*, 293 F.3d at 1258. As one district court in this circuit has explained:

> "Once a person establishes a domicile, it continues until the person establishes a new domicile. In this circuit, it is elementary that, to effect a change of one's legal domicile, two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient."

*Audi*, 273 F. Supp.2d at 1226 (citations and emphasis omitted); *see also Valentin*, 254 F.3d at 366 ("in order to change domiciles, a person must move to a new state in which she intends to remain indefinitely"). "When ... a party contends that it has changed its domicile, and that contention has been challenged by the opposing party, there is a presumption of continuing domicile that must be overcome." *Reynolds v. Wohl*, 332 F. Supp.2d 653, 656 (S.D.N.Y. 2004). This presumption imposes "a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one." *Audi*, 273 F. Supp.2d at 1226 (citation omitted).

More generally, the burden on the question of Blanton's domicile rests squarely with

---

[11] A recent district court opinion accurately summarized the authorities on this point as follows: "To determine where an individual intends to remain, courts look for objective manifestations of intent such as where the individual is employed and registered to vote; where he pays taxes; the location of his bank accounts, personal property and any land he owns; and whether the individual belongs to any clubs or organizations. ... Also, an individual's statement that he intends to remain indefinitely in a particular state is given some weight." *O'Neal v. Atwal*, --- F. Supp.2d ----, 2006 WL 880240, *3 (W.D. Wis. Apr. 4, 2006)

defendants because it is they who seek a federal forum.  *See McCormick*, 293 F.3d at 1257 ("the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction"); *Pacheco de Perez*, 139 F.3d at 1373 ("In a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction."); *Reynolds*, 332 F. Supp.2d at 656 ("Hornbook law provides that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

    2.  *Application of Standard to Facts.*

  The parties have mustered conflicting evidence as to whether Blanton is domiciled in Louisiana or Alabama for diversity purposes.  In removing this action to federal court, defendants represent that Blanton is domiciled in Louisiana because he undertook a work-related move from Alabama to Louisiana in September 2004, he has lived and worked in Louisiana since that time, and he intends to remain in Louisiana indefinitely.

  Plaintiffs' Motion to Remand mounts a direct challenge to defendants' representation in the Notice of Removal that Blanton is a citizen and resident of Louisiana.  To support their position, plaintiffs unveil several items of investigative detective work that they contend demonstrate that Blanton remains an Alabama citizen.  Among the evidence to which plaintiffs point is the following: (a) Blanton was served with process via certified mail (and appears to have personally signed for same) in February 2006 at 5749 Carrick Road, Eight Mile, Alabama; (b) the 2005-2006 *BellSouth Real Yellow Pages* for Greater Mobile lists telephone numbers for "J Blanton" and "James Blanton" at that same 5749 Carrick Road address; (c) Mobile County Probate Records reflect that Blanton entered into the latest of several mortgages on the 5749 Carrick Road property in May 2004; and (d) two mortgage documents executed by Blanton and his spouse in April 2004 for the benefit of two different lenders included an occupancy provision under which the Blantons agreed to occupy, establish and use 5749 Carrick Road as their principal residence for at least one year, beginning no later than 60 days after execution of the mortgage, unless the lenders waived that condition in writing.[12]  (Plaintiffs' Brief, at 3-6.)

---

[12] Plaintiffs' reliance on the 12-month occupancy condition as evidence that Blanton must be domiciled in Alabama is curious because that mandatory occupancy period would have expired in April 2005.  The operative date for ascertaining Blanton's domicile for purposes of this litigation is February 1, 2006, when this action was filed in state court.  *See Freeport-*

According to plaintiffs, this evidence establishes that Blanton remains an Alabama citizen for diversity purposes, notwithstanding his statements about having moved to Louisiana in 2004.

In support of their contention that Blanton is domiciled in Louisiana, defendants primarily rely on two undated declarations executed by Blanton.[13]  In his earlier declaration, Blanton avers that he presently works for Shell Oil Company in New Orleans, Louisiana; that he moved to Louisiana in September 2004 to take his current job with Shell; that he has "worked and resided in Louisiana since September of 2004"; that he anticipates continuing to work and reside in Louisiana "for the foreseeable future" and "indefinitely"; that he files Louisiana tax returns, has a Louisiana bank account, pays a Louisiana cable bill and purchases Louisiana groceries; and that he does not intend to live or work in Alabama for the foreseeable future. (Doc. 1, at Exh. E, ¶¶ 2, 4-6.)  Blanton's subsequent declaration repeats and in some instances expands on these points by stating that he has worked and resided in Louisiana since October 2004; that his wife and son have remained in Alabama to allow his son to complete high school, with graduation to occur in May 2006; that Blanton's wife "will move to Louisiana this summer to join" him, at which time they plan to purchase a home in the New Orleans area and remain in Louisiana indefinitely; that they plan to place their Alabama home on the market for sale in the immediate future; that ever since October 2004 Blanton's "sincere and fixed intention is to live

---

*McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (citing "well-established rule that diversity of citizenship is assessed at the time the action is filed"); *Chaara*, 410 F. Supp.2d at 1091 (explaining that events preceding or following the filing of the complaint cannot defeat citizenship); *Reynolds*, 332 F. Supp.2d at 656 (similar).  As such, whether Blanton was domiciled in Alabama or not in April 2005, and whether he was in breach of an occupancy clause in a mortgage instrument, is not relevant to the jurisdictional issue presented here.

[13]     The format of the Blanton Declarations is questionable.  Congress has provided that unsworn declarations signed under penalty of perjury must be dated.  *See* 28 U.S.C. § 1746.  Substantial compliance with § 1746 is all that is required.  *See, e.g., Pieszak v. Glendale Adventist Medical Center*, 112 F. Supp.2d 970, 999 (C.D. Cal. 2000) (enumeration of month and year is sufficient to constitute substantial compliance with date requirement of § 1746).  But the Blanton declarations plainly do not satisfy even that low threshold, as they neglect to mention even month and year of execution.  Nonetheless, as plaintiffs have not objected to the Blanton declarations on the basis of this technical defect, the Court will not strike them *sua sponte* as nonconforming under § 1746.

in Louisiana indefinitely and make it [his] personal residence"; and that he harbors "no intention to return to Alabama in the foreseeable future." (Doc. 10, at Exh. A, ¶¶ 2-6.)

Unfortunately, this record is incomplete and inconclusive as to Blanton's domicile, as the fragmentary evidence submitted by the parties raises more questions than it answers. The record clearly reflects that Blanton was domiciled in Alabama prior to September 2004. Thus, he remained domiciled in Alabama in February 2006 absent adequate evidence of a change in domicile, which requires "concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." *McCormick*, 293 F.3d at 1258. On this record, the Court cannot ascertain whether either element is satisfied. Concerning the presence element, it is unclear from the vague statements in his declarations whether Blanton was always physically present in Louisiana in February 2006, whether he was splitting time between Louisiana and Alabama, and what the percentage breakdown of his time in the two states might have been. (He was evidently physically present in Alabama on at least some occasions in February 2006, given that he appears to have personally signed for the certified envelope containing the summons and complaint.) As for the intent requirement, Blanton's declarations profess the requisite intent to remain in Louisiana indefinitely; however, such self-serving statements are of limited evidentiary value and must be weighed in tandem with more objective evidence of intent. *See Audi*, 273 F. Supp.2d at 1227 (indicating that declarations of intent to change domicile are permissible, but "may lack persuasiveness or be negated by other declarations or inconsistent acts"). As described *supra*, the case law identifies numerous objective indicia of intent, including such factors as where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional, civil, religious or social organizations are established. The record is silent on most of these factors for Blanton as of February 2006.[14]

---

[14] At most, Blanton offers that he paid Louisiana income taxes for 2004 and 2005 (without indicating whether he also paid Alabama taxes for those years), that he was employed in Louisiana, that he has a bank account in Louisiana (again, without mentioning whether he also has an Alabama account), that he pays a Louisiana cable bill (without referencing any other

Because of the partial and inconclusive nature of the record, two drastically divergent sets of inferences may be culled from the evidence presented.  One plausible inference from these facts is that when Blanton accepted a job in Louisiana in late 2004, he moved to that state and never looked back, establishing roots in Louisiana and settling in to reside there for an indefinite period of time.  Another inference that one might extract from these facts is that Blanton took a job in Louisiana, but as of February 2006 was continuing to shuttle back and forth between Alabama and Louisiana, maintaining his residence in Alabama without taking objective steps to establish a new residence in Louisiana, even though he intended to do so in the future.  Although the former situation would evince the requisite change of domicile, the latter unquestionably would not.  *See, e.g., Audi*, 273 F. Supp.2d at 1228 (no change in domicile where defendant accepted job in Florida and lived in Florida part-time, but maintained principal residence in Alabama, kept spouse and home furnishings in Alabama, paid for Alabama utilities, utilized an Alabama driver's license and vehicle registration/tag, was registered to vote in Alabama, utilized an Alabama cell phone, and failed to establish membership in any Florida organizations); *Valentin*, 254 F.3d at 367 ("An amorphous desire to relocate from one place to another at an indeterminate future date does not suffice to effect a change of domicile.").

To date, the parties have simply marshaled insufficient evidence to inform the Court's judgment as to whether Blanton had actually changed his domicile to Louisiana by February 2006, or whether he was merely planning to do so at some later date following his son's graduation from high school in Alabama.  The jurisdictional significance of this distinction is immense, so it would be manifestly inappropriate to render an off-the-cuff opinion based on an incomplete record.  Under the circumstances, the Court agrees with plaintiffs that limited jurisdictional discovery is necessary to identify a critical mass of relevant facts concerning Blanton's citizenship.  Because this issue is of vital importance to an assessment of diversity jurisdiction, the Court **grants** plaintiffs' Motion for Leave to Take Limited Discovery (doc. 6), as a matter of equity and fairness, in light of the uncertainty in the record and the legitimate

---

utilities, much less whether he is paying Alabama utility bills too), and that he buys groceries and other goods in Louisiana (once again, without mentioning whether he is also purchasing goods in Alabama).

grounds for questioning whether Blanton has actually changed his domicile from Alabama to Louisiana.

That said, however, the Court is not authorizing free-ranging discovery regarding any topics that might be of interest to the litigants. Rather, this preliminary round of discovery shall be strictly limited to the question of Blanton's domicile as of the date on which this lawsuit was initiated. In the undersigned's view, the requisite information needed to pinpoint Blanton's February 2006 domicile can be readily derived from taking his deposition, and perhaps engaging in limited use of other discovery tools. In that regard, plaintiffs are authorized to propound written discovery (not to exceed 10 interrogatories and 10 requests for production, with each subpart to be counted separately) to Blanton. Such written discovery must be served by no later than **June 2, 2006**, with responses due no later than **July 3, 2006**. Moreover, the parties are **ordered** to cooperate in good faith to set a jurisdictional deposition of Blanton on or before **July 10, 2006**. The parties are directed to confer and cooperate in good faith in determining the logistics of the deposition, including its date, time, location, and mode (*e.g.*, in person, telephonic, videoconference, etc.). This deposition (and all discovery authorized herein) must be narrowly confined to exploration of domicile issues reasonably necessary for resolution of the pending Motion to Remand, and may not veer into the merits of this dispute or any other subjects, other than the common law factors considered in assessing Blanton's domicile as of February 2006. The discovery contemplated herein is not a substitute for, and in no way shall preclude, merits discovery as to Blanton during the ordinary course of discovery if the Motion to Remand is ultimately denied.

## IV. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Defendants' objection to the Motion to Remand (doc. 4) on grounds that Blanton was fraudulently joined is **overruled**.
2. Defendants' Motion for Leave to Take Limited Discovery (doc. 9) on the fraudulent joinder issue is **denied**.
3. Plaintiffs' Motion for Leave to Take Limited Discovery (doc. 6) on the issue of Blanton's domicile is **granted**, subjected to the parameters and constraints set

      forth above.

4.     The Motion to Remand (doc. 4) will be **held in abeyance** on the question of whether complete diversity of citizenship exists pending the completion of jurisdictional discovery concerning Blanton's domicile, as outlined above.

5.     All parties may file supplemental briefs containing additional (not redundant) information and argument on the subject of Blanton's domicile on or before **July 17, 2006**, at which time the domicile issue presented in the Motion to Remand will be taken under submission.

DONE and ORDERED this 25th day of May, 2006.

                                      s/ WILLIAM H. STEELE
                                      UNITED STATES DISTRICT JUDGE