IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRENDA M. SLATE,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 06-0149-WS-M |
| | ) |
| **SHELL OIL COMPANY,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on plaintiffs' Motion to Remand (doc. 4) this action to the Circuit Court of Mobile County, Alabama. The parties having completed jurisdictional discovery as to the domicile of defendant James R. Blanton, and the parties having supplemented the record with memoranda and exhibits documenting the fruits of such discovery, the Motion is now ripe for disposition.[1]

**I.    Background.**

　　*A.    Factual and Procedural Posture.*

On May 18, 2006, the undersigned entered an Order (doc. 15) tracing the factual and procedural posture of this action in detail. In lieu of reiterating that discussion in its entirety, a brief synopsis will be furnished here. This lawsuit for personal injury and wrongful death arises from a May 2004 accident on a platform rig in Alabama state waters. On February 1, 2006, five named plaintiffs (Brenda Slate, Anthony slate, Sandra Slate, Joseph Saylor, and Leah Saylor) filed suit against Shell Oil Company, Shell Yellowhammer Plant, James Blanton, and Daniel Echols in Mobile County Circuit Court, seeking relief for injuries and damages incurred in the accident. Defendants timely removed this action to this District Court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332. Plaintiffs now seek to remand this action to state

---

　　[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

court, arguing that defendant Blanton is of non-diverse citizenship relative to the plaintiffs, such that diversity jurisdiction does not lie. It is undisputed that all plaintiffs are citizens and residents of Alabama. (Joint Notice of Removal (doc. 1), ¶ 6.) Therefore, if Blanton is properly classified as an Alabama citizen, then diversity of citizenship is lacking and this action must be remanded. By contrast, if Blanton is a citizen of any state other than Alabama, then § 1332 jurisdiction has properly been invoked and the Motion to Remand must be denied.

Because the record was incomplete and inconclusive as to Blanton's domicile, the Court authorized a limited six-week jurisdictional discovery period to enable the parties to marshal evidence to bolster their respective positions and inform the Court's judgment as to where Blanton was domiciled in February 2006, when the Complaint was originally filed. The parties have now completed that discovery period and supplemented the record with additional evidence and argument.

### B.     *Evidence Concerning Blanton's Domicile.*

In a jurisdictional deposition taken on July 6, 2006, Blanton testified that he moved from Texas to Alabama in 1996; that his home address is 5749 Carrick Road in Eight Mile, Alabama; and that he has lived at that address since August 1996. (Blanton Dep., at 7-8.)[2] Blanton has owned the Carrick Road house subject to a mortgage since 1996, and owns no other real property anywhere. (*Id.* at 38-39, 45.) As of February 2006, Blanton's wife of 23 years, two of his three children (the youngest of which graduated from an Alabama high school in May 2006) and both of his dogs resided full-time at the same Eight Mile address. (*Id.* at 10-12, 18, 58, 62, 72-73.)

Blanton is a long-time employee of Shell Oil Company. In September 2004, he accepted a promotion from his position in Mobile to a job based at One Shell Square, New Orleans, Louisiana. (*Id.* at 18, 62-63.) From September 2004 through July 2006, Blanton has maintained two residences, including both the Eight Mile house and an apartment in New Orleans. (*Id.* at 55, 62.) This pre-furnished apartment was provided for Blanton by his employer, and Shell pays

---

[2]     Plaintiffs have submitted the entire 81-page transcript of Blanton's deposition as Exhibit A to their Supplemental Brief (doc. 17). In so doing, plaintiffs run afoul of Local Rule 5.5(c), which provides that "If discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response." *Id.*

the rent, the parking fees, and all utility bills on such apartment. (*Id.* at 55-56, 80.) In that regard, the record is clear that as of January and February 2006, Blanton was "staying in an apartment that was completely paid for by Shell Oil Company." (*Id.* at 57.) As of February 2006, Blanton had not put his Eight Mile house up for sale, nor had he purchased any property in Louisiana. (*Id.* at 54-55.) All of Blanton's home furnishings remain in Alabama. (*Id.* at 76.)

As of February 2006 (and for approximately 18 months before that), Blanton was splitting time nearly equally between the Eight Mile home (where his family and pets live and where he has lived since 1996) and the New Orleans apartment which was provided and paid for by Shell. He was spending every Saturday and Sunday, and approximately half of his Fridays, at the Eight Mile house with his family, just as he had done since September 2004. (*Id.* at 19-20, 78.) His weekly routine as of February 2006 was to commute to work in Louisiana, spend four nights in Louisiana for work, and come home to Alabama to spend three nights with his family. (*Id.* at 60-61.)[3]

Blanton's documentation and records are almost exclusively Alabama-based. He holds an Alabama driver's license, an Alabama gun permit, an Alabama hunting license, and an Alabama fishing license. (*Id.* at 25.) He does not possess Louisiana analogues to any of these items. Blanton's only active bank accounts are at AmSouth Bank in Mobile, with whom he has a 10-year banking relationship, and those accounts list his Alabama address. (*Id.* at 28, 49.)[4] He is registered to vote in the state of Alabama, and nowhere else. (*Id.* at 29-30.) The only healthcare providers that Blanton sees are located in Alabama, and he schedules appointments with them to

---

[3] Blanton testified that he was able to see "a lot of the Thursday evening games and Friday evening games" that his son, Brandon, was playing in high school sports in Alabama during the time period in question. (*Id.* at 21.)

[4] This testimony contradicts Blanton's declaration filed as Exhibit E to defendants' Notice of Removal (doc. 1) on March 10, 2006, wherein he declared under penalty of perjury as follows: "I have a bank account in Louisiana [and] pay a Louisiana cable bill." (*Id.*, ¶ 4.) Neither of these statements appears true as of February or March 2006; therefore, it is difficult to fathom why Blanton signed a declaration averring them be true and correct. Perhaps there is some innocuous explanation for these conflicting statements. In its discretion, the Court will not pursue the issue further. Nonetheless, at a bare minimum, this inconsistency underscores the need for counsel and witness not to be cavalier in preparing affidavits or declarations, as these sorts of discrepancies are potentially quite serious.

coincide with his time at Eight Mile. (*Id.* at 30-32.) All utility bills for the Eight Mile home are sent to Blanton at that address. (*Id.* at 32-33.) Blanton receives approximately 90% of his mail at the Eight Mile address, and the remainder goes to his New Orleans office, not to the Shell apartment. (*Id.* at 39-40.) Blanton has an Alabama home telephone number and an Alabama cell phone number, without Louisiana iterations of either. (*Id.* at 34.) All four automobiles that Blanton owns (including the one that he personally drives) are registered in Alabama and bear Alabama license plates. (*Id.* at 35-36.) Blanton's boat and four-wheeler are also registered and maintained in Alabama. (*Id.* at 36.) Blanton pays Alabama property taxes, but no Louisiana property taxes, although he pays income taxes in both states. (*Id.* at 42.) He is a member of a church in Prichard, Alabama, as well as a fishing club in Mobile, Alabama. (*Id.* at 51-53.) He belonged to a hunting club in McIntosh, Alabama in early 2006. (*Id.* at 53.) By contrast, Blanton established no new memberships in Louisiana organizations since beginning work there in September 2004. (*Id.* at 59.)[5] And the only bills he was paying in Louisiana as of February 2006 were grocery bills. (*Id.* at 60.)

Notwithstanding the foregoing, Blanton also testified that he subjectively considers the Shell apartment to be his home, and that he has no intention of staying in Mobile because the only existing Shell jobs in Mobile are at a lower level than his current position in Louisiana. (*Id.* at 62-63.) In that regard, Blanton's testimony was unmistakably clear that he intends to remain in the New Orleans area for the foreseeable future. (*Id.* at 63.) In explaining why he has not registered his vehicle in Louisiana or registered to vote in Louisiana, Blanton cited the impact of Hurricane Katrina on the region in August 2005 and the resulting collapse of New Orleans' infrastructure. (*Id.* at 63-64.)[6] He testified that his daughter has enrolled at Dillard University in

---

[5] To be sure, Blanton did testify that he joined a church in New Orleans in 1987, and that he will always be a member of said church. (*Id.* at 59-60.) However, that membership vastly predated his September 2004 relocation to Louisiana, and had no nexus to that event. Besides, the testimony is that this New Orleans church was destroyed by Hurricane Katrina, so it is unclear whether that nominal membership had any practical import by February 2006. (*Id.* at 68-69.)

[6] That said, Blanton conceded that he never attempted to register to vote or to register his vehicle in Louisiana post-Katrina, and that he had never attempted to complete these tasks prior to Katrina, either. (*Id.* at 70.) Blanton used the same explanation to justify his failure

New Orleans in anticipation of the family's move. (*Id.* at 65.)[7]  Furthermore, Blanton indicated that he intends to purchase a house in New Orleans, but that he has not done so yet because of lack of familiarity with the hurricane-ravaged area. (*Id.*) Blanton explained his dual-residence lifestyle since September 2004 as being animated by a desire not to displace his youngest child during his high school years. With his son's graduation in May 2006, Blanton stated, the family is now implementing its plan to sell the Eight Mile house and move to Louisiana. (*Id.* at 66-67.)[8]

## II.     Determination of Blanton's Domicile as of February 2006.

### A.     *Legal Standard.*

For diversity purposes, a person is a citizen of the state in which he is domiciled. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001) (same). "Domicile," in turn, is properly defined as "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005) (citations omitted); *Valentin*, 254 F.3d at 366; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").[9]

---

to open a Louisiana bank account; however, further questioning revealed that he had visited but a single bank branch in Louisiana, found that the branch had closed because of storm damage, and did not pursue the matter further. (*Id.* at 77-78.)  This is hardly compelling evidence that the hurricane has rendered it infeasible to open a bank account in the state of Louisiana.

[7]     However, Blanton also testified that his youngest child, who has just graduated from high school in May 2006, has elected to attend college at Alabama A&M University, near Huntsville, Alabama. (*Id.* at 71.)

[8]     In that regard, Blanton said that he was meeting with his real estate agent on the very afternoon of the deposition to sign the listing agreement for the Eight Mile house, and that he expected a "for sale" sign to be posted the following day. (*Id.* at 66.)  Blanton and his wife did in fact execute a sales authority agreement with their realtor on July 6, 2006. (Defendants' Supplemental Brief (doc. 18), at Exh. B.)

[9]     In this regard, a critical distinction emerges between residence and domicile. As a matter of law, a person residing in a particular state is not necessarily domiciled there, and therefore is not necessarily a citizen of that state. *See, e.g., Mississippi Band of Choctaw Indians*

Determination of a party's domicile requires a "totality of the circumstances" approach weighing a constellation of objective facts, no single one of which is entitled to controlling weight. *See Macone v. Nelson*, 274 F. Supp.2d 136, 139 (D.P.R. 2003); *Greenblatt v. Gluck*, 265 F. Supp.2d 346, 351 (S.D.N.Y. 2003); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp.2d 1220, 1227 (M.D. Ala. 2003).[10] Among the numerous indicia considered are the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional, civil, religious or social organizations are established. *See Macone*, 274 F. Supp.2d at 139; *Greenblatt*, 265 F. Supp.2d at 351; *Audi*, 273 F. Supp.2d at 1226.[11] In addition to these objective criteria, the domicile inquiry also considers a party's subjective statements of intent, although such representations are not dispositive. *See Audi*, 273 F. Supp.2d at 1227 (statements of intent are also considered in determining domicile, but may be negated by other declarations or

---

*v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (observing that "one can reside in one place but be domiciled in another"); *Chico v. Puerto Rico Elec. Power Authority*, 312 F. Supp.2d 153, 157 (D.P.R. 2004) ("Mere residence is insufficient to determine a party's jurisdictional status."). That said, while the two concepts are analytically distinct, a party's place of residence is *prima facie* evidence of his domicile. *See Chaara v. Intel Corp.*, 410 F. Supp.2d 1080, 1091 (D.N.M. 2005) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile.") (citations omitted); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp.2d 1220, 1226 (M.D. Ala. 2003) (recognizing presumption that state of residence equates to domicile).

[10] One appellate court has explained in colorful fashion that "in this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking. Domicile is not a thing, like a rabbit or a carrot, but a legal conclusion ...." *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991).

[11] A recent district court opinion accurately summarized the authorities on this point as follows: "To determine where an individual intends to remain, courts look for objective manifestations of intent such as where the individual is employed and registered to vote; where he pays taxes; the location of his bank accounts, personal property and any land he owns; and whether the individual belongs to any clubs or organizations." *O'Neal v. Atwal*, 425 F. Supp.2d 944, 947 (W.D. Wis. 2006).

inconsistent acts).

A party can have only one domicile at a time. *See Valentin*, 254 F.3d at 367. When one's domicile is established, it can change only upon a concurrent showing of both (1) physical presence at the new location, and (2) intent to remain there indefinitely. *See McCormick*, 293 F.3d at 1258. As one district court in this circuit has explained:

> "Once a person establishes a domicile, it continues until the person establishes a new domicile. In this circuit, it is elementary that, to effect a change of one's legal domicile, two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient."

*Audi*, 273 F. Supp.2d at 1226 (citations and emphasis omitted); *see also Valentin*, 254 F.3d at 366 ("in order to change domiciles, a person must move to a new state in which she intends to remain indefinitely"). "When ... a party contends that it has changed its domicile, and that contention has been challenged by the opposing party, there is a presumption of continuing domicile that must be overcome." *Reynolds v. Wohl*, 332 F. Supp.2d 653, 656 (S.D.N.Y. 2004). This presumption imposes "a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one." *Audi*, 273 F. Supp.2d at 1226 (citation omitted).

More generally, the burden on the question of Blanton's domicile rests with defendants because it is they who seek a federal forum. *See McCormick*, 293 F.3d at 1257 ("the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction"); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998) ("In a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction."); *Reynolds*, 332 F. Supp.2d at 656 ("Hornbook law provides that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

### B.     *Blanton was Domiciled in Alabama in February 2006.*

There can be no reasonable dispute that, prior to September 2004, Blanton was domiciled in Alabama. He and his family had lived there full-time for eight years. The critical jurisdictional question before the Court is whether defendants can overcome the presumption of

continuing domicile in Alabama based on Blanton's circumstances as of February 2006.[12]  After careful review of the parties' supplemental filings, the Court finds that defendants cannot meet that burden.

Defendants argue that Blanton changed his domicile in September 2004 when he moved to Louisiana to accept a new job.  This event altered Blanton's domicile, defendants maintain, because he has remained in Louisiana and he intends to remain there for the foreseeable future.  But the facts do not conform to this line of reasoning, and do not show any fixed intent to remain in Louisiana indefinitely as of the commencement of this litigation in February 2006.  At that time, Blanton had been nominally living in Louisiana for 17 months; however, he was still spending three nights per week at his house in Alabama.  During the four nights each week that he spent in Louisiana, he was staying in temporary lodging provided by his employer.  His family, his pets, his household goods, three of his four automobiles, and both of his recreational vehicles (boat, four-wheeler) remained in Alabama on a full-time basis.  He had neither placed his Alabama house on the market, nor had he acquired (or made any reasonable inquiries into acquiring) a house in Louisiana.  There is no evidence that his wife or children had ever visited him in Louisiana, or that they had ever stayed with him in his company-furnished living quarters.  Moreover, Blanton had engaged in no meaningful attempt to change any of the accoutrements of citizenship from Alabama to Louisiana.  His mailing address, telephone numbers, driver's license, vehicle registration, voting registration, banking arrangements, hunting/fishing licenses, gun permit, and health care providers were all in Alabama, and he had undertaken minimal (if any) effort to transfer any of them to Louisiana as of February 2006.

As of February 2006, then, the sum total of Blanton's contacts with the state of Louisiana were that he was employed there; he slept four nights each week in transient, employer-provided housing for which he paid nothing for rent, parking or utilities; he bought some groceries there; and he paid income taxes in Louisiana (along with the income taxes he paid in Alabama).  In the

---

[12]  As mentioned in the Court's previous Order, the jurisdictional facts pertaining to Blanton's domicile must be gauged as of February 1, 2006, when this lawsuit was filed. Subsequent events are irrelevant to the domicile inquiry.  *See, e.g., Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005) ("Whether diversity of citizenship exists is determined at the time the suit is filed.").

opinion of the undersigned, these objective indicia fall well short of evincing the requisite present intent to remain in Louisiana indefinitely.[13] By all appearances, Blanton was simply commuting to work in Louisiana, but he was still living in Alabama. The totality of evidence confirms that Blanton was properly classified as being domiciled in Alabama, not Louisiana, as of February 2006.

In this regard, two district court decisions are instructive. In *Combs v. T.J. Samson Community Hosp.*, 2006 WL 1895460 (W.D. Ky. July 7, 2006), the plaintiff, who had been domiciled in Kentucky, took up a residence in Florida and married a Florida woman, but maintained many ties to Kentucky, including a Kentucky mailing address, a Kentucky bank account, a Kentucky driver's license, Kentucky voter registration, a Kentucky-registered vehicle, and Kentucky real property. The *Combs* court rejected the plaintiff's self-serving contention that he had changed his domicile to Florida when he married his wife, where "[b]asically all of the traditional indicators of domicile suggest that [plaintiff] had not changed his domicile at the time he and his wife filed their complaint." *Id.* at *4. An even closer analogy is found in *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp.2d 1220 (M.D. Ala. 2003), wherein the defendant, an Alabama citizen, accepted employment in Florida and moved in with his parents in Sarasota, Florida. Defendant did not pay rent or utilities at his parents' home. Defendant's wife remained in Alabama to finish work for her employer. Defendant's furniture and household goods remained with his wife in their Alabama apartment. After relocating to Florida, he spent approximately 40% of his time with his wife living in their Alabama apartment. He signed no lease for a new residence in Florida. His vehicle was licensed and registered in Alabama, his driver's license was issued in Alabama, he was registered to vote in Alabama, he utilized an

---

[13] Defendants' strongest point in favor of Louisiana domicile is that Blanton's employment was located exclusively in the state of Louisiana as of February 2006; however, case law reflects that employment location is not afforded heavy weight in the domicile calculus. *See Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 360 (S.D. Ga. 1984) (observing that cases where party asserts that he established domicile in new state by act of changing employment to new state "tend to minimize the significance of a party's employment alone as a factor determining domicile"); *Jedrejcic v. Croatian Olympic Committee*, 190 F.R.D. 60, 85 (E.D.N.Y. 1999) ("Although place of employment is a factor to be considered in deciding domicile, some indicia are more meaningful than others.").

Alabama cell phone number, his mail continued to be delivered to the Alabama address, and he initiated no steps to change any of these objective indicia of domicile to Florida. Based on this evidence, the *Audi* court concluded that "the totality of the relevant evidence ... indicates that [defendant] was, for purposes of diversity jurisdiction, a domiciliary of Alabama" when the complaint was filed, "and that as of that date he had not changed his domicile to Florida." *Id.* at 1228. The facts here are comparable to, and if anything are more compelling than, those in *Audi* and *Combs*.[14]

In finding that defendants have failed to satisfy their burden, the Court has given careful consideration to three arguments that they have posited. First, defendants point to Blanton's subjective statements, in which he has unequivocally recited an intent to stay in Louisiana long-term.[15] But a party's self-serving statements of intent are not binding, especially if they are not consistent with his conduct. *See, e.g.*, *District of Columbia v. Murphy*, 314 U.S. 441, 456, 62 S.Ct. 303, 86 L.Ed. 329 (1941) ("One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts."); *Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir.

---

[14] Another example is *Hendry v. Masonite Corp.*, 455 F.2d 955 (5th Cir. 1972), in which the defendant had undertaken a job-related relocation from Mississippi to Illinois and had moved into an apartment in Chicago before being served with process. The old Fifth Circuit held that the defendant had not proven that he had changed his domicile to Illinois, inasmuch as the only home he owned was in Mississippi, all of his household furnishings were in Mississippi, his family still lived in Mississippi, and he still voted in Mississippi. Under the circumstances, the court explained, the defendant "proved only that at the time he was served with process, ***he had an intention to change his domicile at some future time***," which was not legally sufficient to effect a change in domicile. *Id.* at 956 (emphasis added). That is precisely the case here, as well. *See also Delgado Ortiz v. Irelan*, 830 F. Supp. 68, 70-71 (D.P.R. 1993) (no change in domicile where defendant moved from Virginia to Puerto Rico, accepting employment in Puerto Rico and staying in a furnished Puerto Rican apartment, but left his wife and family in Virginia, continued to own a home in Virginia, had most of his personal property in Virginia, maintained a Virginia driver's license, and continued receiving health care in Virginia).

[15] In his deposition, Blanton testified that he considers the New Orleans apartment to be his home, that he has no intent to return to Mobile to work for Shell, and that he intends to remain in the New Orleans area for the foreseeable future.

1972) ("In determining one's citizenship or domicile statements of intent are entitled to little weight when in conflict with facts."). Had Blanton harbored a fixed, definite, present intent to move permanently to Louisiana in September 2004, it is inconceivable that he would have left his family and personal belongings behind in Alabama, stayed in transient lodging provided by his employer for 17 months without exploring permanent housing options, commuted to work every week from his house in Alabama, and made no effort to change driver's licenses, fishing/ hunting licenses, gun permits, vehicle registrations, voting registrations, banking affiliations, mailing addresses, telephone numbers, health care providers, and the like to Louisiana. At most, Blanton's conduct prior to and during February 2006 reflects an indefinite desire to change his domicile to Louisiana at some future date. Such a status is not legally sufficient to accomplish a change in domicile. *See, e.g., Valentin*, 254 F.3d at 367 ("An amorphous desire to relocate from one place to another at an indeterminate future date does not suffice to effect a change of domicile.").

Second, defendants attribute Blanton's failure to "spread more roots in the New Orleans community" to the destructive effects of Hurricane Katrina. (Defendants' Brief (doc. 18), at 4.) To emphasize the point, defendants submit Exhibit C, a 52-page compendium of news articles documenting the dislocations and devastation in the Crescent City in the wake of the storm. The Court well understands the widespread upheaval wrought upon the New Orleans community by Hurricane Katrina. But the problem with attempting to lay blame for Blanton's inaction at Katrina's feet is that defendants claim he changed his domicile to Louisiana when he took up part-time residence there in September 2004, fully 11 months before the hurricane hit. There could have been no storm-related impediment to his "spreading roots" in Louisiana during that interval, yet he did not do so. Moreover, while Blanton testified that he would have registered his vehicle and registered to vote in Louisiana were it not for the hurricane, there is no indication that he ever attempted to do so following Katrina. Likewise, there is no evidence that, post-Katrina, he tried to obtain a Louisiana driver's license or that he engaged in any meaningful effort to open a Louisiana bank account or to scout suitable housing alternatives for his family in the New Orleans area. This dormancy, both before and after Hurricane Katrina, renders implausible and ineffectual defendants' storm-related explanation for Blanton's extensive trappings of Alabama domicile and lack of countervailing ties to Louisiana as of February 2006.

Third, defendants assert that Blanton's continued Alabama connections should not be held against him for jurisdictional purposes because those contacts are "sensible" and based on the virtuous parental decision not to uproot Blanton's son for his last two years of high school. (Defendants' Brief, at 3.)  However, the domicile inquiry does not encompass a qualitative assessment of whether a party had good reasons or bad reasons for maintaining ties to a given state.  At best, the record supports a conclusion that in February 2006, Blanton harbored an intention to change his domicile from Alabama to Louisiana at some future date following his son's graduation from high school.  A good-faith desire or plan to change one's domicile in the future does not effect a change in domicile today.  *See, e.g., Hendry*, 455 F.2d at 956 (no change in domicile where defendant's evidence showed only that he had intention to change domicile at some future time).

### III.	Conclusion.

For all of the foregoing reasons, the Court finds that defendants have failed to satisfy their burden of establishing that Blanton had changed his domicile from Alabama to Louisiana as of the inception of this litigation.  As Blanton therefore must be deemed an Alabama citizen for diversity purposes, and as it is undisputed that plaintiffs are Alabama citizens, complete diversity of citizenship is lacking and jurisdiction cannot lie under 28 U.S.C. § 1332.  Defendants have cited no other legal basis for removal jurisdiction.  Defendants having failed to meet their burden of establishing the requisites for federal subject matter jurisdiction, the Motion to Remand (doc. 4) is **granted**.  This action is **remanded** to the Circuit Court of Mobile County, Alabama pursuant to 28 U.S.C. § 1447(c), for further proceedings.

DONE and ORDERED this 27th day of July, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE